Good morning, Your Honors, and may it please the Court, Jeremy Grable on behalf of the appellant, Genesis Marine, and I believe I've reserved four minutes for rebuttal. Exactly four years ago this week, this Court held in the Bonvillain case that the six-month window for a vessel owner to file for limitation under the Federal Limitational Liability Act is a, quote, a claim processing rule, not a jurisdictional rule as it had long been considered. But Judge Engelhardt's opinion in Bonvillain did not go any further and did not explain the implications of that change, what he described as a change in course. And in the four years since, this Court has not had an opportunity to address this issue. In fact, we've not seen any court around the country address this issue in the context of a limitation action, namely the implications of that six-month deadline no longer being jurisdictional. This appeal today squarely presents that issue, and we believe this Court should provide important guidance to the Maritime Bar on what this means now that we're under a claims processing regime and no longer a jurisdictional regime. And we believe when the facts of this case are examined and analyzed through the proper court lens, with the proper presumptions and the proper standards of review, it becomes clear that the district court erred in dismissing Genesis Marine's limitation as untimely. So if you had to state the new rule or the existing rule, that is, that it's claims processing and not jurisdictional, in one or two sentences, how would you state the generic rule? Not the rule as it applies to your facts, but what is the generic rule? If I may, Your Honor, I was going to state the old rule pre-Bonvillon and then the new rule post-Bonvillon. I think that's a helpful comparison. So pre-Bonvillon, it was a jurisdictional rule. It was a challenge that had to be made via a Rule 12b1 motion to dismiss for lack of subject matter jurisdiction. And when you evaluate a 12b1 motion, the courts are obviously, the federal courts are courts of limited jurisdiction. So the presumption is that the case lies outside of the court's jurisdiction, and the burden would be on the vessel owner to demonstrate that the case, that jurisdiction exists. And to do that in this context, they would have to prove that the claim was, that the petition was timely filed under the six-month rule. So the burden would be on the vessel owner. The presumption is against timeliness, and importantly, under the old regime, the district court could resolve factual disputes under Rule 12b1. The new regime, it's a claims processing rule. And as we noted in our Rule 20HA letter this week, the court just two weeks ago explained that means it's now an affirmative defense. This six-month argument is now an affirmative defense. But that was a bankruptcy case. So how does, other than telling us the claims processing, it was a bankruptcy case? It was a bankruptcy case, Your Honor. But, well, it, it, it, the statement that we, we quoted is clear that a claims processing rule gives the claimant an affirmative defense. And that's how Mr. Darrow raised it. He raised it properly here. He raised it as an affirmative defense. My point is that in evaluating that issue now, it's no longer evaluated under 12b1. It's evaluated under either 12b6 or here, Rule 56, summary judgment. The burden has shifted now. So now, as the movement, Mr. Darrow has the burden to prove that our petition is untimely. We no longer have to prove it's timely. He has to prove it's untimely. And in evaluating the evidence, under Rule 56, the presumptions are in favor of the non-movement, in favor of the vessel owner. All factual inferences, we're familiar with the traditional Rule 56 standard of review. All factual inferences are drawn in our favor. So we think that, Your Honor, to state the rule, it's fundamentally changed the analysis. It's almost as if the court has gone from a de novo standard to a clear air standard or vice versa. It's that fundamental. The presumptions are different. The inferences are drawn in a different way. My friend likes to argue that this is a bench trial. So those Rule 56 arguments and standards are sort of weakened, and the district judge has some discretion. And that's true. In bench trials, the court does have a little more discretion in evaluating summary judgment. But this court, in an opinion by Judge Garza, that Judge Stewart and Judge Haynes joined, School Board versus U.S. Department of Interior, in 2011, made clear, even in a bench trial, that the court cannot resolve disputed material facts. And that's our backup argument here. So I want to turn to the facts here for a second, because I think once we understand that framework, we really— Even in a bench trial, what? So in a bench trial, Mr. Darrow argues that the judge can basically weigh the evidence and resolve factual disputes, just like they could under Rule 12b1. So they argue there's no change. And we dispute that. And this court held, in the School Board case that I mentioned, that while the court has a little more discretion in saying, I would view this evidence the same at trial as I view it now, if there are material disputed facts, you have to go through the trial. So our point is that even in a bench trial, Rule 56 still applies. A bench trial is a trial. I guess that's where you're losing me. I'm sorry. I'm comparing a summary judgment to the trial. So in this case, the district court threw us out on summary judgment. And our backup argument is that at a bare minimum, she should have pushed this to trial to resolve these factual disputes, particularly under this new regime that we're under, where the inferences are made in our favor. Your Honors, there's a really good opinion out of the Eleventh Circuit a few years ago called the Orion case that also, like Bonvillain, recognized initially that this is a claims processing rule, not jurisdictional. And then it went on to analyze the two lead cases from this court, Extine and RLB Contracting. And we know from Extine that the six-month window doesn't automatically start on the first notice of the claim. It doesn't even automatically start when the claimant files a complaint. This is the reasonable possibility test. So- I mean, we have a lot of cases in the immigration situation that used to be viewed as subject matter jurisdiction, but now are viewed under this different arena. But in the claim processing, we say, on timing, that as long as the other side objects, if they didn't object, it would be waived. But if they do object, then it can be thrown out the way it would have been thrown out in jurisdiction on the timing, whereas a jurisdiction can never be waived. You all could spend years doing something, and if subject matter jurisdiction doesn't exist, it gets thrown out. So that's the difference stated in immigration cases. Why wouldn't you think that would make some sense here? Because they didn't just ignore it. That's absolutely right, Your Honor. That is one of the other implications of Bonvillain. It's now an affirmative defense that the claimant could waive if he didn't assert it. But having asserted it on timing, we say now we look at the timing, period, end of story. That's kind of what we do in immigration cases. Why isn't that the arena here? It is. I think our argument, Your Honor, is that we're not arguing that he's waived this affirmative defense. We're arguing that the district court analyzed the defense under essentially a pre-Bonvillain standard, where she essentially says we had the burden and that we were arguing that he should have the burden. It's about the burdens and the inferences. So I'm not saying that the court shouldn't analyze timeliness. I'm saying that the way that the court does that now is quite different. We're starting with the deck is essentially used to be stacked against timeliness. It is now stacked in favor of timeliness, which— All right. So assuming you're right about your statement of the revised rules, so how does it apply to the summary judgment record here? Right. So the reasonable possibility test is a fact-intensive inquiry. And in all of these cases, you look at—initially, what you look at is the nature of the incident, the nature of the injuries, and the value of the vessel. Here it's undisputed that the value of the vessel is there are three. There's a tug and two barges that are part of the incident here. $12.5 million is the value of those vessels. That is significantly higher than any value of any of the vessels in any of the reported cases dealing with the six-month rule, almost by a factor of 10. That's an extremely, extremely valuable vessel. On the other hand, the incident here is a routine back injury. Mr. Darrow is a tanker man on this barge. He's throwing a line as the barge is mooring at a terminal on the river, and he says he hurt his back. He had actually been complaining of back pain a few days earlier, another factual dispute that we would like to evaluate at trial. But in any event, it's not a casualty. It's not a collision or an elision. There aren't multiple claimants. It's an individual routine back injury. And he's also a low-wage earner. He was earning $250 a day by his own complaint. He was at the bottom of the totem pole on this vessel. That equates to about $40,000 a year. So at the outset, you've got an extremely valuable vessel and an extremely routine minor injury. It's not like X-Teen, where the claimant's leg essentially got torn off almost, but when he got wrapped up in a line and pulled into a mooring bit. It's not like RLB Contracting, where four people on a pleasure boat ran into an unmarked pipe, were thrown overboard, and one of the children died. In those two cases, the vessel was only worth $750,000, and the injury was catastrophic. And this court had no problem saying, that is enough to put a vessel owner on notice. But here, we don't think those initial circumstances are enough. So what my friend points to is this affirmative defense that we asserted in state court. So Mr. Darrow filed in state court, and as vessel owners typically do, at least in Louisiana, we plead several affirmative defenses, contributory fault and limitation, because we're allowed to pursue that in state court. And in these routine single claimant minor injury cases, that's what we do. We don't file for limitation. It's typically dealt with in state court. Both Mr. Darrow and the district court seem to say that by simply asserting the legal defense of limitation, that that is somehow a judicial admission, or some sort of factual admission, that the vessels, that the claim, that Mr. Darrow's claim, was reasonably likely to exceed $12.5 million. And we've briefed this issue, Your Honors, but this is really, I think, the important, really the only point in time that anyone has been able to point to, the district court or Mr. Darrow, to say that this is when the clock starts. It's this affirmative defense in our state court answer. But an affirmative defense cannot be binding, first of all, from state court, a statement in a pleading in state court cannot be binding evidence on summary judgment in federal court. This court has held that. Can't be some kind of judicial estoppel? It's not judicial estoppel. It's not a judicial admission because it was never accepted by the state court, first of all. It was a statement by a counsel. We're going from state court to federal court, which creates problems. And in the Blankenship case, which we think is essentially directly on point, this court held that a legal defense is also not binding in a subsequent summary judgment issue where we're talking about facts. Explain, maybe you've already tried to do that, but explain why you said that in state court. So limitations, there's two elements to this. So there's, in order to be entitled to limitation under the federal act, we have to prove that the vessel owner did not have privity or knowledge of the incident, and then we have to prove that the claim would exceed the value of the vessel. And so that first element is typically the case. The vessel owner typically will take the position that there was no privity or knowledge. So they plead the affirmative defense as a placeholder because if it turns out that the claim balloons like it did in this case, you know, at the end of the case, four years later, we get amended expert reports saying for the first time that Mr. Darrow was permanently disabled, and then for the first time, they demand $20 million. That happened four years into the case. So we plead the defense in state court to preserve it, but it's not an admission, it's not a factual concession that the claim is actually worth $12.5 million. This claim, frankly, this claim is not worth $12.5 million today. I mean, there's probably a reasonable possibility now because they've got these new expert reports and they've demanded $20 million, but this is an extreme, that's an extreme value. Well, and that still has to get tried. That's right. That will be tried. Even if we ruled against you, I'm not saying we will, but even if we did, you still can argue, huh, huh, huh, and get a lower amount at the trial. That's, I think that's right, Your Honor. That's right. You know, there's, there's been suggestion that, you know, somehow we waited until the last minute to file for limitation. You know, there's, frankly, our view of it is that, and other cases recognize this, there can be gamesmanship on both sides. Claimants can be vague and somewhat misleading in their initial communications to sort of lure vessel owners not to file limitation, and vessel owners can file at the last minute. We filed this, this limitation more than three months before trial, shortly after we received the amended reports and the settlement demand. Mr. Darrow's counsel sent us the initial claim letter six months and three days after the incident. So they let the six months run. They then send the initial notice to us, and they say, he wants maintenance and cure. There's no discussion of extreme damages or catastrophic injury, it's a routine case. And we go on that way, they exchange information, he has some procedures, and we don't dispute that he went through a variety of medical procedures. But none of that gave us any reasonable notice or reasonable possibility that his claim would exceed 12 months. Well, and there's nothing to stop you all from attempting to try to do a settlement. Do the settlement? That's right, Your Honor, of course. I mean, I was a state district judge, and so many people offered high up and the other side low down, and then eventually they managed to settle and walk out of my court. Of course, but if we had not filed for limitation after receiving a $20 million demand, I guarantee you that, and we had done it later, I guarantee you we'd be said to have been late. So that- Yeah, no, I understand that. I'm just saying, don't forget that you can settle. We feel like we need some guidance. You don't have to pay that amount. You can offer a different amount and see what happens. Of course. I see my time is up, I will reserve the rest of it for rebuttal. Yes, thank you. May it please the court, Thomas Flanagan, this is a somewhat unusual case in that the parties come to you with some substantial common ground. The parties agree that the plaintiff's claim presents a reasonable possibility of a judgment in excess of the value of the Genesis vessel. That's, in fact, why the limitation action was filed. The only question- They agree now that that's the case. Exactly, and I think they- That begs the question of whether it was obvious enough that they should have filed earlier. I agree, Your Honor, the question is when. And if it was before June 13 of 2024 that, objectively speaking, they should have known, well, then the judge was correct that this limitation action was untimely. So that's really the question, when, not whether. Now, the governing test is in cases like Extine and RLB contracting, and you all are familiar with those. The reasonable possibility test, those are the law of the circuit. And I'll discuss this Bonvillian case momentarily. There's nothing about that panel decision that overturns this settled rule, a rule announced in Tom Mack in 1996. So the reasonable possibility test is the test that applies. And I think what's important to understand about that test is it acknowledges that in the context of litigating an active claim, there's going to be uncertainty. There's going to be gray areas, there's going to be doubt. And what it tells us is, when there is that uncertainty, the burden is on the vessel owner to act in a timely way. And what this court said in Extine is that when there is that uncertainty, the, quote, risk and burdens associated with that risk are on the owner. And that's the case. This act gives great benefits to a vessel owner, but- You're disagreeing with Mr. Grable that the burden was shifted. Absolutely, the burden was not shifted. We moved for summary judgment, but in no sense did we file a no evidence summary judgment. To say the burden's on them, we're just saying they can't prove timeliness. We- When you move for summary judgment, you have some sort of a burden. What do you acknowledge that your burden is on summary judgment? Your Honor, we took on the burden to prove that this claim was untimely. And we met that burden with reams of evidence. We had, this might be a record, 87 statements of uncontested material fact, 85 of which were admitted. The only two that they denied, one, that they cut off maintenance prematurely, they said no we didn't. And then on another one, it was basically the ultimate question, saying Genesis filed too late, they said no we didn't. Otherwise, all of the facts, the medical treatment, the receipt of expert reports, were all admitted facts. This court has said in cases like Pfeiffer, determining the meaning of those under an objective standard is the job for the court. That's not a fact question. The legal significance of undisputed facts is for the court. And I want to go back to Eckstein because it's a remarkable case in the sense of its parallels to this one. The vessel owner in Eckstein was untimely even though it didn't have a settlement demand within the six month window. It didn't have a clear picture of the claimant's injuries, they were still changing, there was no permanence to that. And the vessel owner could find no precedent for an amount that would put the vessel value in play. The vessel value there was three quarters of a million dollars. The highest quantum that was found in, I believe it was Harris County, was $335,000. And what the court says is, well, that makes it less probable that a judgment in fact would be entered against you in that amount. But there is still a reasonable possibility. Now our case is stronger because Judge Smith, as you noted, Genesis pleaded limitation in its August 2022 answer. And they didn't plead it in a formulaic way. They said that the amount of these claims greatly exceeds the value of the Genesis vessel. But I do disagree with my friend on one point. In no sense did the district court call that a judicial admission. And I refer to page 914 of the record. In fact, what the court said was, whether that statement is regarded as a judicial admission is, quote, of no consequence to her ruling. And I stress that the district court, like Mr. Darrow, did not rest on that statement in the answer, the express invocation of the Limitation Act. We went much further and presented substantial evidence, including, as I'll discuss momentarily, expert reports from vocational rehabilitation experts as well as economists. Now Genesis' reply brief, as a good reply brief does, sharpened the issues. And what Genesis said in its reply is that the trigger was the receipt of updated expert reports in August of 2024. And I'm referring now to page 9 of their reply brief. And they said they had prior expert reports from January of 2024. But those reports, and I quote, did not conclusively opine that Darrow would never return to work. Did not conclusively opine that. Genesis said it learned that to its satisfaction in August when supplemental reports were rendered. We disagree with that assertion for two important reasons. The first, that statement uses the wrong standard. The test is not, and never has been, whether evidence conclusively proves a given point. In fact, in Eckstein, the court rejected a similar argument from the vessel owner, who said that I would have acted sooner, but, quote, the full extent and permanence, close quote, of the worker's injuries were not, quote, definitively known. And the court affirmed anyway, it was untimely. The vessel owner cannot wait for conclusive evidence or a definitive finding. And that goes back to what Eckstein tells us. When there is doubt, the vessel owner must act. But there's a second reason why we disagree with that assertion. In early 2024, January in particular, the evidence showed that Mr. Darrow's ability to work in any capacity was in doubt, and that meets the standard. The only question then was whether he could return to some kind of light or sedentary work, like a sales clerk. He didn't have many transferable skills. He was out of maritime work. Nobody disputes that, at least that that was reasonably clear. And so in January of 2024, Mr. Darrow produced a report from someone named Ms. Beckwith. Joyce Beckwith, a vocational rehabilitation expert. And Ms. Beckwith pointed out a couple of important facts, all of which, again, was in Genesis's possession 11 months before it filed its limitation action. Ms. Beckwith said that Dr. Dietz, the neurosurgeon who operated on Mr. Darrow, permanently precluded patient from going to any maritime work. That's at record page 332. She noted that the plaintiff had not worked in any respect for three years since the accident, that's record page 328. Referring to a pain specialist, she said that the patient may possibly be able to return to work sedentary to light duty, record page 330. But then she concludes, relegation to part-time work or loss of employment may be inevitable, and that's record page 332. This is a written expert report in the possession of Genesis in January of 2024. They waited 11 months to petition the federal court for limitation. Now, that report was a summation and followed other documents, of course, other evidence that had been given to Genesis. I won't go through all of it, but some of it. For example, Dr. Todd, he was an orthopedic surgeon who did an IME in 2022 and then updated his findings in April of 2023, some 20 months before the limitation action. He said that in fact, Mr. Darrow needed all of those back surgeries. That in his opinion, in April of 23, he had reached MMI, or maximum medical improvement. And yet, he was still having numbness and nerve damage and pain. They knew that in April of 2023. Genesis asked Dr. Dietz, the neurosurgeon, to fill out an ADA form, an Americans with Disabilities Act form, about Mr. Darrow's ability to return to work. Dr. Dietz said the plaintiff couldn't return to his job because of failed back syndrome and had pain and suffering that are expected to be permanent, record page 284. Genesis discharged the plaintiff from employment 22 days later. So again, this idea that the world changed in August of 2024 is simply not compatible with this record. And then finally, there's yet another piece of evidence, testimony of a psychiatrist, Dr. Jagger, who was deposed by Genesis in April 2024, outside of the six month window. And Dr. Jagger said that in his opinion, Mr. Darrow was permanently disabled because of anxiety and depression and recommended that he seek permanent social security disability payments because he could not work. That's record page 752. Now let me shift back to Bonvillian and Judge Smith, you asked a question, what is the new test? And I may have missed it, I don't think there was a clear answer. There certainly was not a clear answer about the new test in briefing. Is it still reasonable possibility? We would say yes, no court has overruled Extine. We would also note that other circuits have had occasion to look at the matter of limitation and the reasonable possibility test after concluding that that time bar is not jurisdictional. The second, the ninth, the eleventh, they've all recognized this is a claim processing rule and Judge Haynes, to your point, have nevertheless applied in the absence of waiver the time bar as Congress set it out. So there is no incompatibility, in fact what Genesis is suggesting is that the court create a circuit split and overrule circuit precedent and to create some uncertain new standard. We've seen no case suggesting that the reasonable possibility test does not apply in the same way that it already had. Mentioned briefly the Langston case, we don't see the relevance of that. There is a suggestion of waiver in that case, it's not a limitation case or even a federal rules case. But as for this idea that untimeliness is an affirmative defense that must be raised, we agree. It was raised at record page 47, four days, the summary judgment in fact, four days after filing the complaint in this case. So you may think you've already answered this question, and maybe you have, but let me ask it more specifically. Tell us why there are no disputed, there are no material disputes of fact. Yes, Your Honor, a couple of reasons. First, the facts were set out in minute detail in the statement of undisputed material facts. Literally 87 of them, and as I mentioned, just two were disputed. So when I mentioned, for example, Dr. Todd doing the IME, that was in 2022. Dr. Todd doing the updated IME report in 2023. Dr. Dietz, the Beckwith report, all of these things are identified item by item in those statements. Identify for us, I don't go through the whole list, of course there's not time for that. But identify two or three of them that you think are the most salient, undisputed facts for purposes of your client's case. Your Honor, I will give you a few. For example, in October of 21, Dr. Todd, the orthopedic surgeon, did his IME. And he said, yes, a fusion at L4 and L5 is in order. Mr. Darrow is not capable of any work. That's record page 200. We filed a lawsuit, and these cases look at the lawsuits themselves. In December of 2021, alleging that Mr. Darrow was unfit to be a seaman, he claimed damages for disability and loss of earning capacity, that's record page 210. We answered some discovery in January of 2023, said we're seeking damages for loss of wage earning capacity and medical expenses, and stated that Mr. Darrow had not worked in two years as of that point. That's record page 226, and I could go on, there's many more like that. I think it's also instructive, though, to look back at that reply brief, because I think it really sheds light. Because what our friends have told us is, we did see the reasonable possibility in August of 2024. And it's not entirely plausible to me why they would say this, but they said, knowing that he would never work in that light duty or sedentary job, that made us concerned that the general damages number could go way up. So they always knew he couldn't do maritime work. But they said, knowing that he wouldn't be the sales clerk, for example, or some other type of position that was not physically taxing, made us realize general damages could be a big problem here, and that's why they acted. But if those are the facts that turned the dial for them, and they've told us on page nine of the reply that they are, they knew that for sure in writing in January of 2024 with the Joyce Beckwith report. Again, who said loss of employment may be inevitable. So based on what they've told us in the reply brief, they knew to their own satisfaction in January of 2024 that this was a reasonable possibility. This court has said that's not a particularly stringent standard, and it was amply met here. I mentioned briefly the judicial admission, I want to go back to that. Whether it is a judicial admission is of no consequence. We've not argued on appeal that it is, but the district court specifically said, again, page 914, that's of no consequence to her analysis. But she did consider it, and she could hardly be faulted, because Genesis presented the document to her. At page 815 through 819 of the record, they presented their answer to the district court in connection with the motion for summary judgment. So under Blessing Marine Services, a party that introduces evidence can hardly complain that its evidence was considered. I would also note that this court looked at the identical type of evidence in Tom Mack in 1996. So again, the district court can hardly be faulted for noting what Genesis said in August of 2022, long before filing its limitation action. And then finally, your honor, there was some suggestion that the district court weighed testimony. The district court did nothing of the kind, and I want to refer the court to the order, because the judge does use that word weighed at page 916 of the record. But it is crystal clear in looking at that sentence, which I'd like to read to you, that she was in no sense comparing or balancing testimony. In fact, what she did was to say, to paraphrase, there's some bad evidence against Genesis that suggested permanent disability early on, say in 2022. She goes, well, that alone may not put beyond doubt, which is again, a harsher standard, whether the amount is over 12.5 million. It must be weighed, and let me quote here. It must be weighed with Genesis's own assertion that the value of damages was above $12.5 million in August 2022, that's the answer, as well as the growing evidence of Darrow's injuries, again, page 916. So the court was not saying, on the one hand, on the other hand, did not make any credibility findings. These factual assertions were undisputed, and their legal meaning was for the court to decide. And then finally, counsel acknowledged, and we agree, that the district court does have more latitude to grant summary judgment in bench trial cases. The court said so in Jones v. United States in 2019. If the district court should determine that the same facts presented to it in a bench trial would not change its mind, again, more latitude to grant summary judgment. We don't even get there, though, and I want to kind of end where I began with Eckstein, which kind of gives broad berth on this question of a limitable claim. And it instructs vessel owners in about as clear language as it could do. When there is uncertainty or doubt, the risk is on you. You must act when it is reasonably knowable. Here, Genesis told us it was reasonably knowable in August of 2022, and added the rhetorical emphasis of that adverb. These claims greatly exceed, and then again, telling us in the reply brief at page nine, that knowing that Mr. Darrow couldn't work that light to sedentary job, that changed everything for it, and that made it want to seek that federal forum. It knew that for sure in writing in January of 2024. Walk us through, if you will, if we agree with you and affirm what's before us, what then happens in this case? I'm not asking you whether you're going to agree to settle or anything like that. I'm just saying procedurally, where does the case go if we affirm? Your Honor, if you affirm where this case would go, at least relative to the claim by Mr. Darrow, there may be other cross-claims involving other parties. This would go back to state court for a trial. This was close to trial, maybe three months away, when it was, basically, there was an order prohibiting further prosecution based on the limitation action. Once that is dismissed, the case resumes its course in state court. If there's no further questions, we ask the court to affirm. Thank you. Mr. Trevino, your vote. Your Honor, maybe I wasn't clear. The test, we are not suggesting that the reasonable possibility test, that that trigger, that language has changed. It's the way that the court must analyze the facts as part of the fact-intensive inquiry to decide when a vessel owner is put on reasonable notice. So we're not suggesting that the reasonable possibility test needs to be overruled. But this concept that the burden or that the risk is on the vessel owner, that is one of those presumptions that we argue fundamentally changes post-Bonvillan. That is my point. The affirmative defense puts the burden on the claimant in evaluating the evidence, the inferences are in our favor. With respect to, obviously, we didn't hear the value of the vessels at all. This is a, I highlighted this, $12.5 million. They want to talk about the medical chronology. The summary judgment motion they filed, these 85 facts, all they were were, we sent you this document. We sent you this report. Of course that's undisputed. We received the document, but that doesn't, we admitted that we received these documents, but then we disputed their materiality. None of those, we're not conceding that he's actually permanently disabled. We received a report from them, but as soon as we received these new reports in August of 2024, that's why we saw the continuance of the trial in state court. We needed to do supplemental reports ourselves. There's all sorts of credibility and fact issues with respect to the medical treatment. But at the end of the day, it just doesn't pass the smell test. And that's essentially the test the court used in RLB contracting. A dead child, $750,000, obviously that's a risk. A line throwing injury to a tanker man making $40,000 a year in his mid-40s, $12.5 million? No way, it doesn't pass the smell test in our opinion. The affirmative defense point, the judge did say that it was of no consequence to her. In the very next paragraph, she holds it against us. Genesis's statement in the answer, that the amount of damages claimed by Darrow greatly exceeds the amount of the vessel, that's her weighing of evidence. So that is legal error in itself. Under Blankenship, which we didn't hear about today, and Mr. Darrow didn't even mention in his brief, a state court affirmative defense of a legal defense is not evidence at summary judgment in federal court. The district court absolutely held that against us. That was a huge thumb on her scale when she weighed the evidence, and that was legal error. The reference to Tom Mack is before Blankenship. We suggested to the court in our briefing, the Tom Mack case does not govern that issue at all. Your Honors, I think we explained in our briefing that it's the $20 million settlement demand, which came in conjunction with the supplemental expert reports. It's not simply that he's permanently disabled, it's that all of a sudden the doctors changed their opinion. He's permanently disabled apparently in their view, and we get this ridiculous settlement demand, which objectively puts us on notice. So while we don't concede or we don't contest sort of the chronology that they sent us these medical records, we don't think that that raised a reasonable possibility of this claim exceeding $12.5 million until August of 2024. And Your Honor, what will happen if you affirm this case? Every vessel owner will file limitation in every Jones Act minor injury case. There's simply no reason not to. If this case puts us on reasonable notice, that's going to create a flood of litigation, and that's why the claims processing regime. Your Honor, Judge Haynes mentioned the immigration cases in our Guetta Hernandez that we discussed in our brief. The court made clear, when you're applying claims processing rules, the court has some flexibility to think about those policy implications. We don't want to encourage a flood of preemptive and potentially unnecessary limitation filings. I see my time is up. Can I finish one sentence? Thank you. The court made clear, and I think it was Eckstein, that filing limitation is expensive. It requires us to post a bond. There's all sorts of things. We don't want to be encouraging vessel owners to do that and to clog the federal courts on every routine injury. So we would ask the court to reverse and remand either finding that the suit was timely or at least remanding for trial on the issue. Thank you, Your Honors. Thank you, Mr. Grable. Your case is under submission and the court is in recess under the usual order.